## BENJAMIN BLOSSOM versus REBECCA GOODWIN, Administratrix.

An executor who, after an action brought against him, represents the estate of the deceased to be insolvent, is not, by the act of June 15th, 1784, (*stat.* 1784 c. 2,) entitled to a continuance of course, pending the commission of insolvency. *Qu.*

THIS was an action of covenant, brought against the intestate, *Samuel Goodwin,* in his lifetime, and had been continued upon a suggestion * of his death, for the purpose of [ * **503** ] notifying his executor or administrator to defend the suit. At June term, 1804, *Rebecca Goodwin* came in as administratrix, accordingly. It was then continued at her motion, and has since been further continued to the present term. And now the counsel for the defendant moved for a further continuance, on the ground, that since the death of *Samuel Goodwin,* pending this suit, his estate had been represented insolvent, and that a commission had thereupon issued from the Court of Probate, for the examination of the claims of his creditors, which is now depending. And it was argued in support of the motion, that a representation of insolvency, is, in every case, a suspension of all proceedings at the common law, until the report of the commissioners shall have been made, and by which it will appear, whether the estate is insolvent, or not ; and it seemed to be also understood by the counsel for the defendant, that a decree of insolvency would be eventually a bar of this action, and the plaintiff without remedy, if he should neglect to lay his claim before the commissioners. And the act of June 15th, 1784, (*stat.* 1784, c. 2, § 1,) was relied on, as giving, in express words, the right of continuance to the defendant in this case.

On the other side, it was said that the practice, since that act, had been to permit the plaintiff to proceed in his action, and have his damages ascertained in the common mode, for which, however, he was not to have execution of course, but the amount of his claim, thus ascertained, was to be added to the commissioners' report—as in the other cases of disputed claims, respecting which, there is no provision to that purpose in the statute.

THACHER, J. According to my present recollection, the practice has uniformly been as stated by the counsel for the plaintiff. The action having been commenced, previous to the representation * of insolvency, and a right thereby attached in [ * **504** ] the plaintiff, I am of opinion, that he has his election to

proceed to trial here, and have his damages ascertained by the jury, or to lay his claim before the commissioners.

SEWALL, J.   The existing statute, for the distribution of insolvent estates, has intended, as I understand it, a material alteration from the former statute on the same subject, in the provisions made, respecting the effect of a representation of insolvency, upon actions by the creditors of the supposed insolvent, against his executor or administrator, then pending, or afterwards brought.   By the statute formerly in force, it was enacted, (*a*) " that no process should be allowed against the executor or administrator of an insolvent estate, so long as a commission should be depending thereon ; and every creditor, who should not have made out his claim with the com missioners, was debarred of his debt, unless he could find some es tate not put into the inventory."   Under that statute, as I take the construction to have been, all proceedings at the common law were suspended ; but no action was barred by a mere representation of insolvency.   And all actions at common law, whether commenced before or after the representation, were barred by a decree of insol vency, with certain exceptions mentioned in the statute, but not important to be considered in deciding the present question.   By the statute now in force, (*b*) " no action brought against an executor or administrator after an estate shall have been represented insolvent, shall be sustained," (with certain exceptions, similar to those in the former statute,) " unless by the consent of the executor or administrator, &c., in which case, the judgment of the court shall determine the claim, and be reported by the com-
[ * **505** ] missioners as such.   * And actions against the executor or administrator, brought before the representation of insolvency, are to be continued until it shall appear whether the estate is insolvent or not ; " and if found insolvent, the process shall be conducted according to a former provision of the statute.   There are two distinct provisions, to which this direction may be referred : to that first mentioned, in the case of an action prosecuted with the consent of an executor or administrator, for the determination of a doubtful claim ; and to the provision before made by the statute, in the cases of a claim, rejected wholly, or in part, by the commission-ers, or of which the allowance is questioned by the executor or ad-ministrator.   In either of these cases, an action may be prosecuted at the common law, under certain restrictions for notice, mentioned in the statute, unless the creditor and the executor or administrator

(*a*) 8 *W. III.* ch. 2. *O. P. L. B.* p. 66.
(*b*) Act of June 15, 1784, (*stat.* 1784, *c.* 2, § 1.)

shall submit their dispute to a reference. " And when a claim shall be disputed at the common law, execution shall not issue, as in common cases; but the judgment of the court respecting the same, shall be the amount of the claim, and added to, or deducted from the commissioners' report, as the case may require." This more general provision for claims disputed at the common law, is apparently the most suitable to the case of a judgment, upon an action pending at the time of a representation of insolvency, and the practice, as far as I have known it, has been according to this construction. The judgment rendered in such case is not enforced by an execution, when the estate proves insolvent; but is certified to the Court of Probate, to be there added to the commissioners' report, and considered in the decree of insolvency and distribution. Thus the distinction in the present statute, of an action pending at the representation of insolvency, from an action * afterwards commenced, is preserved throughout. In [ * 506 ] the former case, the remedy remains complete; though it is varied in the mode when the estate proves insolvent: and I can discover no words, or necessary implication, which may be construed to bar, for that cause, an action pending at a representation of insolvency, in any event. Nor am I aware of any legal plea or answer of which an executor or administrator can avail himself to drive the creditor, in an action pending at the representation of insolvency, from a court of common law to the tribunal of the commissioners; for those creditors only are finally barred, in the event of insolvency, who shall not make out their claim before the commissioners, *or at the common law,* or before referees, in the manner the act provides. But the act provides explicitly for the case in question, and for the course to be taken in enforcing the judgment of the court, in the event of insolvency. There is a restraint for this purpose, and I conclude for this purpose only, upon the *action,* as the statute expresses it, which is to be continued until it shall appear whether the estate is insolvent or not; and the *process* is then to be in the particular mode previously appointed. The purpose of the statute will be completely answered by construing the word " action " to intend process; and more especially that part of the process which succeeds the judgment of the court; and any other construction must occasion unreasonable perplexities and expense to the creditor whose suit is pending, and unnecessary and injurious delays to all the creditors, by further postponing the settlement of the estate, after the report of the commissioners. I am therefore inclined to adopt this construction, and to say that an executor or administrator is not assisted by this statute to postpone

a trial in an action pending at the representation of in-
[ * 507 ] solvency, * or to prevent a determination at common
law of the claim made by such action. That it is the
obvious duty of every executor and administrator of an estate,
supposed to be insolvent, to concur, by all proper means, in produc-
ing the most speedy determination of such claim ; and that his
security, provided by the statute, is, a postponement of any further
process until it shall be known whether the estate is insolvent or
not ; and, in the event of insolvency, a prevention of any further
process at common law, unless he shall become exposed by his
waste or neclect. (a)

From this view of the subject, the conclusion upon the present
motion must be that, in my opinion, a continuance is not to be
allowed in this action upon the grounds suggested by the counsel
for the defendant.

SEDGWICK, J. In this case, the question is whether the adminis-
trator is entitled, by law, to a continuance ; and this depends on the
meaning of the statute of June 15, 1784, (*stat.* 1784, *c.* 2, § 1,
" for the distribution of insolvent estates." Before I proceed to
consider the statute, I state these facts : *First*, the estate of the
intestate was represented insolvent, by the administrator, to the
judge of probate ; *Secondly*, this action was commenced before it
was *so* represented. The act provides, that when the estate of any
person shall be insolvent, it " shall be distributed to and among the
creditors " in proportion to the sums due to them. To effect this
object, commissioners are to be appointed by the judge of probate,
on a representation made to him of the insolvency of the estate.
The proceedings of the commissioners are then prescribed ; and they
are to make a report to the judge of the claims by them allowed,
which claims, after payment of those debts that are to be fully
satisfied, are to be paid, in just proportion, out of the in
[ * 508 ] solvent estate. But to secure justice to the executor * or
administrator, on the one hand, and to the creditors
respectively, on the other, in case of dissatisfaction with the report
of the commissioners, either may have the demand, which has been
allowed or rejected, as the case may be, tried at law ; or, if the
parties agree, by referees. Having thus provided for the adjustment
of all claims where there has been no litigation at law, the act
proceeds to declare, that no action shall be sustained, which shall be
brought against an executor or administrator, after the estate has
been represented insolvent, except in the instances where the whole

(a) See additional act, June 20, 1794, (*stat.* 1794, *s.* 5.)

378

debt is to be paid ; **unless** the executor or administrator shall consent to have the claim, on which the action is brought, settled by course of law. The statute then takes up the case of the parties to this record in these words, " And all actions brought against any executor or administrator before the estate is represented insolvent, shall be continued until it shall appear whether the said estate is insolvent or not." From this general view of the provisions of the act, nothing appears more clear to my mind, than that it was the intention of the legislature, *that all the claims of creditors, which are to be subject to average, are, in the first instance, to go before the commissioners, except only where the executor or administrator shall consent that they be " settled by course of law."* But, so far as respects the case before the Court, we are not driven to search for the intention of the legislature by laborious investigation ; the words are express, definite, and, to my mind, unequivocal as any in the language ; and had I been to have expressed their meaning, according to my understanding of them, I could have found none more precise. " All actions brought against an executor or administrator before the estate shall be represented insolvent," (which is this case,) " *shall be* continued until it shall appear whether the estate is insolvent or * not." That has not yet ap- [ * **509** ] peared ; for it is agreed that the report of the commissioners is not yet made, and of course, it is not known nor can it be conjectured, whether the estate is insolvent or not. Then, says the statute, " *the action shall be continued.*" Wherever the sense of the legislature is express, I dare not say such was not the intention. It is sufficient for me, sitting here, to discover the meaning from the words. There might exist with the legislature reasons beyond the reach of my intellect. It is sufficient for me, that in this instance I cannot, as I believe, mistake the meaning. It, however, seems to me that the legislature intended to prevent, as far as could justly be done, all expenses of unnecessary litigation ; and I think that this was wise and prudent. For, in cases of insolvency, all unnecessary expenses of litigation must be borne by the creditors, who at all events must suffer by a loss of a part of their debts. But it is said that the intention of the legislature will be satisfied by staying execution after judgment, if judgment should be rendered for the plaintiff. The act says " the *action* shall be continued," which is altogether different from staying *execution.* By the judgment the *action* is terminated. By every notion I have entertained of the legal meaning of an *action*, it has a commencement, a pendency, and an end ; and this end is coincident with the rendition of the judgment. If this be just, how can the *staying an execution* and

*continuing an action* be the same act of the court? How can the former be a compliance with the imperative injunction of a statute whereby the latter is commanded? In my opinion they ought not to be confounded. Had not my brothers expressed a different opinion, it would have been impossible for my mind to have created a doubt on this question. But the opinion of the Court is that the action proceed to trial.